**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**JERMAINE E. CRAWFORD,**

**Plaintiff,**

**v.**

**13-CV-1(HKS)**

**CATTARAUGUS COUNTY, et al.,**

**Defendants.**

---

**DECISION AND ORDER**

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. #28.

Plaintiff filed this *pro se* action on or about January 2, 2013, seeking relief pursuant to 42 U.S.C. § 1983 and common law.  Dkt. #1.  By Order filed January 31, 2014, United States District Judge Charles J. Siragusa pared down plaintiff's complaint, dismissing certain causes of action.  Dkt. #4.

Plaintiff claims that while he was incarcerated at the Cattaraugus County Jail ("the County Jail" or "the Jail") in January of 2012, defendants Dr. Godfrey and Nurse Chapman provided constitutionally inadequate medical treatment in violation of the Eighth Amendment, and that the municipal defendant is liable under *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978).  Dkt. #1, p. 8.

Currently pending before this Court are the defendants' motions for summary judgment.  Dkt. #s 43, 44.

## **FACTUAL BACKGROUND**

In his complaint, plaintiff alleges he requested sick call upon complaints of bleeding and swelling of the rectum.  Dkt. #1, Attach., ¶ 8.  After seeing Dr. Godfrey and Nurse Chapman, plaintiff was given laxatives, suppositories, and stool softeners, and was scheduled for a colonoscopy at an outside facility.  *Id.*, ¶ 9. On February 8, 2012, specialist Dr. Al-Humadis scheduled surgery. *Id.*, ¶13. The surgery was to be performed on February 20, 2012, but prior to that date *"*Cattaraugus County officials had cancelled the surgery.*"  Id.*, ¶ 18.  On February 23, 2012, his attorney informed him that County Jail officials were *"*pushing his sentencing forward . . . because of medical hardship concerns.*"  Id.,* ¶ 19.

Plaintiff was sentenced on February 27, 2012, and was transferred from the County Jail to a New York State correctional facility. *Id.,* ¶ 20.

Plaintiff did not have the recommended surgery until August, 2012.  *Id.,* ¶ 23.  He attributes the delay in part to the County Jail officials ignoring the recommendation for surgery.  He also alleges that he was denied adequate medical care while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), which is not at issue in the instant proceeding.  *Id.,* ¶ 23.

Because of the delay, plaintiff alleges that his condition worsened, resulting in a "massive growth," and complications therefrom, and that he suffered mental anguish and emotional distress.  *Id.,* ¶¶ 23-24.

In support of the motion for summary judgment by Cattaraugus County and Nurse Chapman (collectively referred to herein as the "County Defendants"), the County Defendants submit the affidavit of Daniel French, Captain of the County Jail in 2012 ("French Aff."), affidavit of defendant Jeannine Chapman ("Chapman Aff."), memorandum of law, and an attorney affirmation ("Wagner Aff.") with appended exhibits.  Dkt. #43-1 - 43-9.

In support of his motion for summary judgment, Dr. Godfrey submits a declaration ("Godfrey Decl."), memorandum of law, attorney declaration ("Roman Decl.") with appended exhibits and a statement of undisputed material facts.  Dkt. #s 44-45. No depositions were taken in this case due to plaintiff's incarceration out of state on first-degree murder charges, however, the parties exchanged discovery, including interrogatories.  Romano Decl., ¶ 10.  Where the submitted exhibits are duplicative, only one will be cited herein.

Plaintiff was incarcerated at the County Jail awaiting sentencing for a Class B felony controlled substance conviction in New York State.  Romano Decl., ¶¶ 12, 15.

On or about January 5, 2012, plaintiff began complaining of rectal discomfort, bleeding, and constipation. He was seen by medical staff at the County Jail, comprised of Nurse Chapman and Dr. Godfrey.  Chapman Aff., ¶ 2; Wagner Aff., Ex. 5; Romano Aff., Ex. I.  Dr. Godfrey was employed by the Olean Medical Group, which had a contract with the County Jail to provide medical care and treatment to inmates. Godfrey Aff., Ex. A.  Nurse Chapman was employed as a nurse at the County Jail and worked under Dr. Godfrey's supervision.  Chapman Aff., ¶ 1.

On January 12, plaintiff was transported to Olean General Hospital to be seen by a gastroenterologist, Dr. Sam Samuel, who recommended a colonoscopy and prescribed various medications.  Those prescriptions were filled and provided to plaintiff at the Jail.  Wagner Aff., Ex. 5.  Plaintiff was also referred to a colorectal surgeon, Dr. Adil Al-Humadi.  Romano Aff., Ex. I.

Plaintiff was transported back to the hospital on January 25, 2012, for a colonoscopy, after which surgery was recommended.  *Id.*  On February 8, 2012, plaintiff saw Dr. Al-Humadi, who advised plaintiff to have a hemorrhoidectomy.  Wagner Aff., Ex. 5.  Dr. Al-Humadi's office contacted the County Jail a few days later to recommend and schedule surgery.  Romano Aff., Ex. I.  County Jail medical progress notes dated February 16, 2012, indicate that "[r]ecommendation of hemorrhoidectomy not scheduled due to up-coming court appearance for sentencing to go back upstate."  Wagner Aff., Ex. 5.

David French, Captain of the County Jail at the time ("Capt. French"), states that, upon learning of Dr. Al-Humadi's recommendation, he and other County Jail administrators "contacted the New York DOC and worked with our local district attorney's office to advance the date of Mr. Crawford's sentencing, so that [he] could receive the surgery that had been recommended in a Department of Corrections Facility." French Aff., ¶ 11.  Capt. French states that the Jail's lack of a surgical facility and no overnight medical staff prevents the Jail from providing adequate post-surgical care, such as monitoring medications, changing dressings, or ensuring sterile conditions for a recovering inmate.  *Id.,* ¶ 3.  Moreover, the Olean General Hospital, as an unsecured facility, would have required a Sheriff's deputy to accompany and guard Plaintiff at all times during the proposed surgery and hospitalization.  *Id.,* ¶ 4.  According to Capt. French, DOCCS had secure inpatient medical wards and were equipped to provide surgery and post-surgical care to inmates.  *Id.,* ¶ 5.  Nurse Chapman agrees that it would have been "medically risky" to return an inmate to the Jail after surgery as there were no medical staff on duty during the evening hours.  Chapman Decl., ¶ 6. Moreover, Plaintiff was a "poorly behaved" inmate, which would increase the risk of harm to himself or Jail staff by failing to comply with post-discharge protocols.  *Id.*

According to Dr. Godfrey, he had no role in any determination to delay, postpone, or cancel the planned surgery.  Godfrey Decl., ¶¶ 21, 25-27.

Plaintiff's sentencing date was advanced from March 26 to February 28, 2012, and Plaintiff was then transferred into DOCCS custody on March 1, 2012.  French Aff., ¶ 12.

Plaintiff, in response, acknowledges that he received medical treatment from Dr. Godfrey and Nurse Chapman for constipation, rectal pain, and swollen hemorrhoids while he was incarcerated at the County Jail awaiting sentencing.  Dkt. #48 ¶¶ 7, 11, 16.  Indeed, the only apparent dispute relating to plaintiff's medical care is the cancelation of his hemorrhoidectomy by County Jail administrators in anticipation of his sentencing date (and subsequent transfer to State custody) occurring one month early. *Id.,* ¶¶ 6-9.  Specifically, plaintiff contends that County officials, specifically, Capt., French, recklessly interfered with Dr. Al Humadi's medical orders, and that nothing prevented him [Plaintiff] from recovering from the proposed surgery while he was being held at the Jail.  *Id.,* ¶ 15-17.  Plaintiff acknowledges his history of behavioral infractions during his incarceration, including being placed in isolation following a fight with another inmate.  *Id.,* ¶ 15. He also does not dispute that there were no medical staff present in the Jail between 9:00 p.m. and 7:00 a.m.  *Id.,* ¶ 16.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c).  "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798

(W.D.N.Y. 1997) (internal citations omitted).


       A fact is "material" only if it has some effect on the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*,

140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*,

502 U.S. 849 (1991).


       Once the moving party has met its burden of "demonstrating the absence

of a genuine issue of material fact, the nonmoving party must come forward with

enough evidence to support a jury verdict in its favor, and the motion will not be

defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party

seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Section 1983**

Plaintiff brings his complaint under 42 U.S.C. § 1983, which provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (internal citations omitted).  To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a federal right.  *Id.*  Here, plaintiff claims that defendants violated his rights under the Eighth Amendment to the Constitution of the United States.[1]

**Deliberate Indifference to Serious Medical Needs**

"[T]o establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to his serious medical needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  This standard has an objective prong and a subjective prong: "First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the defendant must act with a sufficiently culpable state of mind."  *Id.* (internal quotations and citations omitted).

---

[1] The Supreme Court has held that although the Eighth Amendment's protections do not directly apply to pretrial detainees, the due process protections afforded to pretrial detainees "are at least as great as the Eighth Amendment protections available to a convicted prisoner."  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983) (citations omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("We have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment").

"Determining whether a deprivation is an objectively serious deprivation entails two inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  First, the Court must consider "whether the prisoner was actually deprived of adequate medical care." *Id.*  Under the first inquiry, "adequate medical care is 'reasonable care' such that 'prison officials who act reasonably cannot be found liable.'" *Martinez v. Aycock-West*, No. 12-cv-4574, 2016 WL 407294, at *5 (S.D.N.Y. Feb. 1, 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994)).  Second, the Court must consider "whether the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 280.  This requires the Court "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)).

Courts consider several factors in evaluating the seriousness of a medical condition, including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance*, 143 F.3d at 702).  "A serious medical need is generally characterized by 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Ferguson v. Cai*, No. 11-cv-6181, 2012 WL 2865474, at *3 (S.D.N.Y. July 12, 2012) (quoting *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)).  Where an inmate alleges "an unreasonable delay or interruption in . . . .  treatment, the seriousness inquiry focuses on the challenged delay or interruption

9

in treatment rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)) (internal quotations omitted).

Because plaintiff alleges that defendants unreasonably delayed his surgical treatment, this Court must focus on "the particular risk of harm faced by [plaintiff] due to the challenged deprivation of care, rather than the severity of [his] underlying medical condition, considered in the abstract[.]" *Smith*, 316 F.3d at 186. "[A] short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where the 'alleged lapses in treatment are minor.'" *Ferguson*, 2012 WL 2865474, at *4 (citing *Smith*, 316 F.3d at 186). "Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness." *Id.* (collecting cases).

With regard to the subjective component, "[d]eliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Salahuddin*, 467 F.3d at 280). Thus, on a motion for summary judgment, "the question that must be answered with respect to this element is whether a reasonable jury could conclude that defendant 'knew of and disregarded an excessive risk to plaintiff's health or safety and that defendant was both aware of facts from which the inference could be drawn that a

substantial risk of serious harm existed, and also drew the inference.'" *Hardy v. City of New York*, 732 F. Supp. 2d 112, 128 (E.D.N.Y. 2010) (quoting *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009)).

### The County Defendants

The parties agree that Plaintiff suffered from rectal bleeding and discomfort while incarcerated at the County Jail, and that he was treated by Dr. Godfrey and Nurse Chapman. Plaintiff received suppositories, laxatives, enemas, stool softeners, pain medication, Tucks pads, and a donut pillow. He saw outside physicians including a gastroenterologist and a colorectal surgeon, who recommended a hemorrhoidectomy and scheduled said surgery eight days away.  Dkt. #48, Ex. 4.

Since medical conditions vary in severity, a decision to leave a condition untreated may or may not raise constitutional concerns, depending on the circumstances.  *Harrison*, 219 F.3d at 136–37 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  Relevant factors informing this determination include whether the plaintiff suffers from an injury or condition that a *"reasonable doctor or patient would find important and worthy of comment or treatment"*, a condition that *"significantly affects"* a prisoner's daily activities, or *"the existence of chronic and substantial pain."*  *Chance*, 143 F.3d at 702 (citation omitted); *Lafave v. Clinton Cnty.*, No. CIV. 00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (citation omitted).

"Generally speaking, hemorrhoids do not constitute a serious medical condition, the delay in treatment of which would amount to a constitutional violation." *Youngblood v. Glasser*, No. 10-CV-1430 NAM/DEP, 2012 WL 4051846, at *8 (N.D.N.Y. Aug. 22, 2012), *report and recommendation adopted*, No. 10-CV-1430, 2012 WL 4051890 (N.D.N.Y. Sept. 13, 2012); *see also Black v. Fischer*, No. 08–CV–232, 2010 WL 2985081, at *10 (N.D.N.Y. July 1, 2010) (constipation and an external hemorrhoid for a period of less than one month, during which plaintiff experienced typical symptoms, including discomfort and minor bleeding, without more, are not sufficiently serious to establish an Eighth Amendment claim) (collecting cases); *McGee v. Pallito*, 10–CV–11, 2014 WL 360289, at *7 (D.Vt. Feb. 3, 2014) (constipation, even with some associated bleeding, has been held to be insufficient for Eighth Amendment purposes).

Here, however, plaintiff's chronic, inflamed hemorrhoids constituted a "serious medical need" because his alleged symptoms – including extremely painful swelling – were atypical and warranted relatively urgent intervention, as evidenced by Dr. Al-Humadi's recommendation for surgery basically within a week's time. *See, e.g.*, *Muhammad v. New York Dep't of Corrs.*, No. 10 Civ. 1707, 2011 WL 797506 (S.D.N.Y. Feb. 3, 2011) (where plaintiff alleged that his hemorrhoids caused him to experience "unbearable and excruciating pain, left him chronically weakened, and has interfered with daily activities by making it practically impossible for him to use the bathroom", plaintiff "sufficiently pled that his medical condition constituted a serious medical need" although "at some later stage in the litigation" it may become clear that the claims are not adequately supported), *report and recommendation adopted*, 2011 WL 797672

(S.D.N.Y. Mar. 3, 2011); *Norton v. Dimazana*, 122 F.3d 286 (5th Cir. 1997) (prolapsed

rectum constituted serious medical need).   Moreover, the County Defendants do not

argue that plaintiff's condition was not a serious medical need.   County Def. Mem. (Dkt.

#43-8), pp. 7-8.   Under these circumstances, the six-month delay in surgical intervention

could have resulted in extreme pain for plaintiff.   Dkt. #48, Ex. 8 (medical notes of Dr.

Sam Samuel dated 1/25/12 stating that plaintiff's "most important symptom seems to be

severe rectal pain with rectal bleeding . . . ."); *Id.*, Ex. 10 (medical notes of Dr. Al-

Humadi dated 2/8/2012 indicating presence of "very large internal and external

hemorrhoids grade 4 . . . [patient] was advised to have a hemorrhoidectomy under IV

sedation local anesthesia").


        According to the County Defendants, the Jail coordinated his sentencing

date to be scheduled early so that he could obtain his surgery while in the custody of

DOCCS, which, they claim, has "secure options for providing surgery to inmates."

County Def. Mem., p. 8.   Capt. French cites to plaintiff's tumultuous record of

misbehavior while at the Jail, his history of bail jumping, and the severity of his felony

conviction in support of advancing plaintiff's sentencing date and resulting transfer to

DOCCS custody.   Specifically, "[g]iven the medical and security risks involved in

transporting a poorly behaved prisoner thirty miles to a public hospital, and attempting

to guard that prisoner during every hour of his hospitalization to prevent injury to

medical staffs or other patients, then transporting the inmate back to the jail in a

possibly medically vulnerable, post-operative state, to a jail that did not have medical

staff on site twenty-four hours a day, it was not reasonable or practical" for plaintiff to undergo the hemorrhoidectomy while in the Jail's custody.  French Aff., ¶ 14.

Plaintiff provides correspondence from his defense attorney at the time indicating that he believed plaintiff's accelerated sentencing date was because "the jail personnel did not want to continue housing" him.  Dkt. #31.  Likewise, a letter from the Cattaraugus County Court shows that an oral request was made "by the jail that your sentence be moved forward . . . as it would alleviate their responsibility to transport you back and forth to your numerous medical appointments."  Dkt. #48, Ex. 5.  Although the County Defendants claim that the surgery was "not actually scheduled" but only "recommended" is also in dispute.  County Def. Mem., p. 4.  Evidence submitted by plaintiff includes correspondence from Dr. Al-Humadi's office which reads, in pertinent part: "You were scheduled for a Hemorrhoidectomy on 02/16/12 . . . . Information was faxed to the Cattaraugus County Jail on 2/9/12. On 2/10/12, my office staff received a call from [the Jail] to cancel the procedure because you were being transferred . . . ."  Dkt. #31.  Finally, although the County Defendants argue that any delay that occurred after plaintiff was transferred into DOCCS custody could not be attributable to them, County Def. Mem., p. 4, it is undisputed that Capt. French, a jail official, took the affirmative steps of re-scheduling plaintiff's sentencing for the purpose of shifting the responsibility of plaintiff's surgery to DOCCS.  French Aff., ¶ 11.  It was this decision by a jail official that resulted in the 6-month delay that ultimately occurred.

Drawing all reasonable inferences in plaintiff's favor, Capt. French's non-medical reasons for accelerating plaintiff's transfer is sufficient to raise an issue of fact as to whether he disregarded an "excessive risk" to plaintiff's health and safety. *Farmer*, 511 U.S. at 834; *see, e.g., Bob v. Armstrong*, No. 02CV1785, 2003 WL 22682335, at *2 (D. Conn. Aug. 26, 2003) ("If financial considerations induced [defendant doctor] to ignore a substantial risk of harm to Bob, the subjective element of the deliberate indifference test may be met."). In *Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F.Supp.2d 408, 413–14 (S.D.N.Y. 2008), the defendant canceled a prisoner's surgery just before it was to begin, allegedly for the purpose of shifting the cost to another entity. *Jones*, 557 F.Supp.2d at 415. This alleged ulterior motive caused the district court to find that the "plaintiff's allegation [was] sufficient to establish the culpable mental state necessary" to show deliberate indifference at the motion to dismiss stage. *Id.* On the present record there exists here a genuine issue of material fact as to whether Capt. French acted with a sufficiently culpable state of mind in intentionally disrupting plaintiff's course of treatment that was determined to be medically necessary by a specialist physician.

Capt. French was previously dismissed as a defendant relating to his handling of a grievance. Dkt. #4, p. 8. Subsequently, the County Defendants, in support of the instant motion for summary judgment, submitted evidence indicating Capt. French's involvement in the first cause of action, namely, deliberate indifference arising out of plaintiff's delayed hemorrhoidectomy. Capt. French acknowledges that he was aware that plaintiff's surgery was necessary and that he and other administrators at

the county Jail intentionally advanced plaintiff's sentencing for the sole purpose of

shifting the burden of plaintiff's surgery to a state facility.  French Aff., ¶¶ 10-11.  A

prison official's intentional denial or delay in accessing medical care may evidence

deliberate indifference.  *See Nelson v. Rodas*, No. 01 Civ. 7887, 2002 WL 31075804, at

*12 (S.D.N.Y. Sept. 17, 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

Indeed, the Second Circuit has "reversed a grant of summary judgment 'where there is

an underlying dispute as to whether legitimate medical claims were deliberately

disregarded as punishment . . .  *or for other invalid reasons.*'"  *Harrison v. Barkley*, 219

F.3d 132, 138 (2d Cir. 2000) (quoting *Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir.1984)).

Capt. French's affidavit, indicating that the County Jail was not equipped to transport

and guard an inmate that is receiving outside care, read in connection with the

submissions by plaintiff regarding his sentencing re-scheduling, give rise to a material

issue of fact as to Capt. French's motivation in intervening in plaintiff's scheduled

surgery.  Given Capt. French's previous dismissal from this action, the Court must

revisit its prior Decision and Order dated January 31, 2014. Dkt. #4.


        Under Rule 54(b) of the Federal Rules of Civil Procedure, "any order or

other decision, however designated, that adjudicates . . .  the rights and liabilities of

fewer than all the parties . . .  may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P.

54(b).  "[T]he Court possesses the inherent authority to *sua sponte* reconsider its own

orders before they become final (absent some rule or statute to the contrary).'"  *Reed v.*

*Sheppard*, No. 12-CV-6655, 2016 WL 1268306, at *2 (W.D.N.Y. Mar. 31, 2016) (quoting

*Cusamano v. Sobek*, 604 F. Supp.2d 416, 435 (N.D.N.Y. 2009); *see also, e.g., Chartis Seguros Mex., S.A. de C.V. v. HLI Rail Rigging, LLC*, No. 11–cv–3238, 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015) ("While motions from the parties under [the Local Rules] are usually the catalyst for . . .  reconsideration, a district court also possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final."). "*Sua sponte* reconsideration is appropriate where there is a need to correct a clear error or prevent manifest injustice, there is an intervening change in the applicable law, or new evidence is available." *Chartis Seguros Mex.*, 2015 WL 545565, at *2 (citing *Benavidez v. Piramides Mayas Inc.*, No. 09 CV 9574, 2013 WL 2357527, at *3 (S.D.N.Y. May 24, 2013)). "The determination of [w]hether such revision is appropriate in any given case is within the sound discretion of the trial judge.'" *Id.* (quoting *Acha v. Beame*, 570 F .2d 57, 63 (2d Cir.1978)); *see also Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), *cert. denied*, 506 U.S. 816, 820 (1992) ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment"). Although the Court properly dismissed Capt. French earlier in these proceedings, his affidavit places him back into this action by conceding his involvement in the alleged conduct.  Thus, the Court *sua sponte* has determined to reinstate Capt. French as a defendant with respect to the first cause of action alleging deliberate indifference to medical needs under the Eighth Amendment.

Nurse Chapman, on the other hand, must be dismissed from this action.  It is undisputed that Chapman did not make the decision to cancel plaintiff's surgery or to

advance his sentencing date.  Dkt. #47, p. 23; Dkt. #48, ¶ 7.  Nor does plaintiff dispute

that he was repeatedly treated for his condition by Nurse Chapman while being held at

the County Jail.  *Id.*  The Jail medical records indicate a thorough treatment plan and

regular care, and therefore no basis exists on this record for a deliberate indifference

claim arising out of the inadequacy of the care he received.  Although plaintiff's

complaint and opposition papers are somewhat ambiguous, one claim that can be

discerned is plaintiff's dissatisfaction with Nurse Chapman's alleged refusal to provide

him with a "medical cell" so that he could administer his hemorrhoid prescriptions in

private.  Dkt. #48, ¶ 11. Assuming such a facility exists within the Jail, this allegation, at

most, gives rise to a disagreement regarding medical treatment and not an actionable

Eighth Amendment violation.  *See Chance*, 143 F.3d at 703 (holding that "[s]o long as

the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to an Eighth Amendment violation").  Plaintiff fails to

establish either component of the deliberate indifference standard with regard to Nurse

Chapman, and summary judgment must be entered in her favor.


With regard to the County defendants' qualified immunity argument,[2]

County Def. Reply Mem., pp. 1-3, the Court need not consider whether the rights at

issue in this case were clearly established for purposes of evaluating the individual

defendants' entitlement to qualified immunity because plaintiff's rights were not violated

---

[2] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Consequently, a defendant is entitled to qualified immunity if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008).

by Nurse Chapman's conduct.  *See Pearson*, 555 U.S. at 236 (affirming that the

protocol mandated by *Saucier v. Katz*, 533 U.S. 194 (2001), whereby a court was

required to evaluate first whether a right had been violated before considering whether

the right was clearly established, while no longer mandatory, "is often beneficial").


      In order to impose liability on Cattaraugus County, under the doctrine of

municipal liability, plaintiff must prove "(1) an official policy or custom that (2) causes the

plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of*

*Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citing *Batista v. Rodriguez*, 702 F.2d 393,

397 (2d Cir. 1983)).  With regard to the cause of action against the County, plaintiff

merely contends that his "claim against Cattaraugus County as a municipality has been

met by a matter of law seeing that all of the [County defendants] are Cattaraugus

County workers." Dkt. #48, ¶ 17.  However, "a municipality cannot be held liable under

[section] 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of City*

*of N.Y.*, 436 U.S. 658, 691 (1978).  Thus, "[a]bsent a showing of a causal link between

an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability .

. . ." *Batista*, 702 F.2d at 397 (citing *Monell*, 436 U.S. at 694 n. 58).


      There are no allegations in plaintiff's initial complaint or opposition papers

that identify a policy or custom of Cattaraugus County that gave rise to the alleged

deprivations – much less than any official policy or custom was the "moving force"

behind the violations he alleges.  *Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.

1996) (citing *Monell*, 436 U.S. at 690–94).  Although plaintiff does vaguely allege that

the County failed to properly train and supervise its employees, and that such failure led

to plaintiff's worsened medical condition, Dkt. #1, ¶ 29, such allegations are conclusory,

and plaintiff has submitted no evidence that would support the claimed failure of the

County to properly train and supervise the jail medical personnel.  *See generally, Segal*

*v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (holding that municipal liability

exists "where th[e] organization's failure to train, or the policies or customs that it has

sanctioned, led to an independent constitutional violation").  Finally, plaintiff alleges an

isolated instance of unconstitutional conduct.  Even if proven, this is generally

insufficient to impose municipal liability.  *See City of St. Louis v. Praprotnik*, 485 U.S.

112, 126 (1988); *Sankar v. City of New York*, 867 F.Supp.2d 297, 308 (E.D.N.Y. 2012),

*recons. denied*, 2012 WL 2923236 (E.D.N.Y. July 18, 2012).  Summary judgment must

therefore be granted to Cattaraugus County on this claim.


### Dr. Godfrey

The undisputed facts reveal that Dr. Godfrey provided plaintiff with

adequate medical care and that he had no role in the scheduling, postponement, or

cancellation of plaintiff's surgery.


The evidence submitted shows that Dr. Godfrey treated and referred

plaintiff to an outside specialist for a consultation, which ultimately resulted in a

recommendation for surgery to be performed by a colorectal surgeon.  There is no

question of fact that plaintiff was seen and treated while at the County Jail on numerous

occasions and was prescribed and provided with medication and therapeutic care for

his condition. Dr. Godfrey approved plaintiff's referral to Dr. Al-Humadi, and there is no

evidence in the record that Dr. Godfrey was involved in any of the decision-making with

regard to plaintiff's scheduling or transfer to state custody before or after being notified

on February 13, 2012, that plaintiff's surgical appointment was re-scheduled.  Plaintiff

himself acknowledges that "Dr. Godfrey wasn't even consulted on the canceling of

surgery." Dkt. #48, ¶ 10.  Briefly stated, there is nothing in the record giving rise to an

issue of material fact that Dr. Godfrey caused or contributed to the delay of plaintiff's

surgery, or contributed to the exacerbation of his condition for purposes of the Eighth

Amendment.


         With regard to the subjective prong, plaintiff does not allege, much less

establish, that Dr. Godfrey acted with culpable recklessness.  To the contrary,

Dr. Godfrey treated plaintiff, referred him to a specialist, and approved his treatment by

an outside colorectal surgeon.  Even if Dr. Godfrey had the authority to prevent a

detainee's transfer due to medical reasons and failed to do so, plaintiff is still unable to

satisfy the subjective component of the deliberate indifference test.  *See, e.g.*,

*Hernandez v. Keane*, 341 F.3d 137, 147 (2d Cir. 2003) (upholding judgment as a matter

of law in favor of defendants in deliberate indifference case where plaintiff failed to

submit evidence that defendants had "direct responsibility, either officially or in practice,"

of placing medical hold on plaintiff).  Plaintiff has thus not presented any evidence to

raise a material issue of fact of deliberate indifference, and therefore Dr. Godfrey's

motion for summary judgment on this claim must be granted.[3]

_____

[3] In the alternative, plaintiff has effectively abandoned his claims against Dr. Godfrey because
he failed to respond to any of Dr. Godfrey's arguments presented in his motion for summary

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court grants the motion for summary judgment (Dkt. #43) by defendants Cattaraugus County and Nurse Chapman, and grants the motion for summary judgment (Dkt. #44) by defendant Dr. Godfrey; and it is further

ORDERED that the Court's Decision and Order dated January 31, 2014 (Dkt. #4) is amended insofar as Capt. Daniel French shall be reinstated as a defendant in this action; and the Clerk of Court shall modify the caption accordingly.

The Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon Capt. Daniel French without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor.

---

judgment. *See Smith v. N.Y.C Dep't of Educ.*, No. 09–CV–9256, 2011 WL 5118797, at *6 n. 8 (S.D.N.Y. Oct. 28, 2011) (finding that *pro se* plaintiff abandoned claims he did not address in his opposition to summary judgment); *Ahmad v. Port Auth. of N.Y. & N.J.*, No. 09–CV–3134, 2011 WL 7080691, at *3 n. 9 (E.D.N.Y. Dec. 7, 2011), adopted by 2012 WL 194965 (E.D.N.Y. Jan. 23, 2012) (deeming *pro se* plaintiff's claims abandoned when he did not address those claims in his opposition to summary judgment and where there was no basis for the claims in the record). Indeed, plaintiff concedes that Dr. Godfrey's care was adequate, and restricts his deliberate indifference claim to the cancellation and postponement of his hemorrhoidectomy.

Pursuant to 42 U.S.C. § 1997e(g)(2), Capt. Daniel French is directed to answer the complaint.

**SO ORDERED.**

DATED:      Buffalo, New York
            August 4, 2016

                               _s/H. Kenneth Schroeder, Jr._
                               **H. KENNETH SCHROEDER, JR.**
                               **United States Magistrate Judge**